```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
DR. IBELKA VARGAS, and the class of     :
those persons similarly situated,       :
                                        :    09 Civ. 8264 (DLC)
                   Plaintiff,           :
                                        :    OPINION & ORDER
             -v-                        :
                                        :
CHOICE HEALTH LEASING and CITIBANK,     :
                                        :
                   Defendants.          :
                                        :
----------------------------------------X
```

APPEARANCES:

For Dr. Ibelka Vargas:
Phillip Jaffe
370 East 76th Street
Suite C1002
New York, NY 10021

For Choice Health Leasing:
Frank Peretore
Peretore & Peretore, P.C.
110 Park Street
Staten Island, NY 10306

For Citibank:
Joseph E. Strauss
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

DENISE COTE, District Judge:

    Plaintiff Ibelka Vargas ("Vargas" or "plaintiff") -- by and through her counsel, Phillip Jaffe ("Jaffe"), who was the former named plaintiff in this lawsuit -- brings this putative class action challenging the lawfulness of late fees she incurred in

connection with a lease of certain dental equipment taken out in Jaffe's name.  On March 4 and 5, 2010, defendants Choice Health Leasing ("Choice") and Citibank ("Citibank")[1] respectively moved to dismiss the plaintiff's amended complaint.  For the following reasons, Citibank's motion to dismiss, converted to a motion for summary judgment, is granted, while Choice's motion to dismiss is granted in part.

## BACKGROUND

The following facts, taken from the January 30, 2010 amended complaint (the "Amended Complaint"), are assumed to be true for the purpose of deciding these motions.  Additional facts are drawn from materials attached to the Amended Complaint.[2]

The plaintiff, Vargas, graduated from dental college in June 2003.  Prior to obtaining her "New York State Dental License," the plaintiff sought to rent certain premises in

---

[1] In its motion to dismiss, Citibank asserts that it is properly served as Citibank, N.A.

[2] "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."  Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005); see also Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 234 (2d Cir. 2008).  Attached to the Amended Complaint is a spreadsheet of payment records prepared by the plaintiff as well as various invoices addressed to Jaffe from January, April, May, June, and September 2009.

Washington Heights for the purpose of establishing a dental office.  Because the plaintiff lacked a credit history and had not yet acquired her dental license, Jaffe agreed to co-sign the lease for the dental office.  In addition, after failing to be approved for a lease of dental equipment necessary for her new practice, the plaintiff asked Jaffe to lease dental equipment on her behalf.

Jaffe contracted with Choice in or about December 2002 to lease certain dental equipment.[3]  Two separate accounts were opened, each in Jaffe's name (the "Accounts").  Jaffe orally agreed with Vargas that, although Jaffe would be the "legal owner" of the leased equipment, she would be responsible for making all lease payments to Choice.

Thereafter, Vargas began making payments on the Accounts.  She paid on time, but "because of the newness of her dental practice," she "ma[de] payments near the deadline for the payment times."  At some point, Vargas was told that if she made her monthly payment on the day it was due by telephone, her payment would be timely and would not trigger a late fee.  This information was incorrect, however, because even when Vargas

---

[3] Portions of the relevant contract documents, including copies of a Loan Agreement and a Master Finance Agreement executed between Jaffe and Choice, have been supplied by Citibank with its motion papers.  These documents were originally supplied by Jaffe with his opposition to the defendants' motions to dismiss the Initial Complaint.

paid on time, the Accounts were not instantly credited, and late fees were incurred.  According to the Amended Complaint, out of fifty-five timely telephone payments made by the plaintiff on one of the Accounts, she incurred late fees twenty-one times.  Likewise, with respect to the other Account, the plaintiff made sixty-eight timely telephone payments, but late fees were incurred twenty-nine times.  The plaintiff contends that these late fees were "randomly" imposed insofar as the companies "receive[d] those payments" and "had the cash in hand" immediately, but "did not post the amount of cash received until several days later."  The Amended Complaint asserts that, as of January 2010, Vargas has paid $228,671.29 in principal and interest and $24,206.93 in late fees on what was originally a $200,000 loan.

                         PROCEDURAL HISTORY

     On September 29, 2009, Jaffe, proceeding pro se, filed this lawsuit as a purported class action against Choice and Citibank for violating various federal statutes as well as state common law (the "Initial Complaint").  On October 28, Choice and Citibank filed separate motions to dismiss the Initial Complaint.  Choice and Citibank's motions became fully submitted on December 23.

In his opposition to the defendants' motions, Jaffe sought permission to add additional claims to his complaint. Accordingly, by Order of January 11, 2010 (the "January 11 Order"), Jaffe was directed that, should he wish to amend his complaint to add or remove claims or parties, his amended pleading was due by February 5. On or about January 30, Jaffe, now serving as counsel, filed this Amended Complaint on behalf of Vargas and a putative class of similarly situated persons. Although the Amended Complaint no longer identifies Jaffe as a plaintiff, it nevertheless continues to allege that Jaffe is "the legal owner of the equipment leased by ChoiceHealth Leasing" and "legally responsible for any indebtedness to ChoiceHealth Leasing." The Amended Complaint asserts various causes of action, including claims to recover usurious or excessive interest under the National Bank Act, 12 U.S.C. §§ 85-86 ("NBA"), and the Depository Institutions Deregulation and Monetary Control Act, 12 U.S.C. § 1831d ("DIDA"); a civil claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c) ("RICO"); and various state-law claims, including fraud; usury; defamation; conversion; and unjust enrichment. The Amended Complaint also enumerates as "cause[s] of action" four requests for particular forms of relief, including damages for pain and suffering, punitive damages, treble damages under RICO, and attorney's fees and costs. The

Amended Complaint names as defendants both Choice and Citibank, asserting that they are the same "leasing company."

On March 4 and 5, Choice and Citibank, respectively, moved to dismiss the Amended Complaint in its entirety.  Pursuant to an Order of March 8, the plaintiff's opposition papers were originally due on March 26.  After multiple extensions of time, the plaintiff filed her opposition papers on June 25.  Citibank's motion became fully submitted on July 9, and Choice's motion became fully submitted on July 16.

## DISCUSSION

### I. Citibank

Citibank has moved to dismiss the Amended Complaint on the theory that it is an improper defendant.  Citibank has attached various affidavits and documentary exhibits to its motion.  In turn, the plaintiff has also proffered various forms of documentary and testimonial evidence.

"'If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'"  Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009) (quoting Fed. R. Civ. P. 12(d)); see also Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154-55 (2d Cir. 2006).  A district court must ordinarily give notice to the

6

parties before converting a motion to dismiss into a motion for summary judgment, but a party "is deemed to have notice that a motion may be converted . . . if that party should reasonably have recognized the possibility that such a conversion would occur."  Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) (citation omitted); see also Hernandez, 458 F.3d at 307.  Where a represented party attaches to a motion to dismiss or to his opposition thereto "extensive materials that were not included in the pleadings," they "plainly should [be] aware of the likelihood of" conversion, and "cannot complain that they were deprived of an adequate opportunity to provide the materials they deemed necessary to support their" position.  Sira, 380 F.3d at 68; see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 573 (2d Cir. 2005).  In light of the parties' extensive factual submissions, it is appropriate to convert Citibank's motion to one seeking summary judgment.

 Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In making this determination, the court must "construe all evidence in the light most favorable to the

nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

Citibank seeks dismissal on the basis that it is an improper defendant. Citibank asserts that, although Choice was

once a Citibank subsidiary, the Accounts were held solely by Choice; that Citibank was never a party to the leasing contracts between Jaffe and Choice which governed the Accounts; that neither Citibank nor any Citibank-affiliated entity is the current holder of the Accounts; and that any and all alleged liability in connection with the Accounts was expressly assumed by another entity, GE Capital Financial, Inc. ("GE Capital") pursuant to a Purchase and Sale Agreement that closed in July 2008 (the "P&S Agreement").

Citibank has proffered ample evidence to demonstrate the merit of its assertions. According to a declaration made by one of Citibank's Claims Officers, Choice was until 2008 a "private label name" for Citicorp Vendor Finance, Inc. ("CVF"), a subsidiary of Citibank. On or about July 31, 2008, however, all of the outstanding shares of CVF were sold to GE Capital pursuant to the P&S Agreement. Through the P&S Agreement, GE Capital received all right, title, and interest in, inter alia, the "Citicapital Healthcare and Equipment" business unit (the "H&E Business"), within which the Accounts were administered. GE Capital also expressly assumed any and all legal liability relating to or arising out of the H&E Business, whether such liability arose before or after the effective date of the P&S Agreement.

9

Citibank has also tendered various affidavits made by a Litigation Specialist employed by GE Commercial Capital Corporation ("GECCC"). These affidavits attest that, on August 4, 2008, a GE Capital-affiliated entity named GE Capital Commercial Inc. ("GECCI") acquired all outstanding shares of CVF and received all right, title, and interest to the Accounts. Later, on October 31, 2008, GECCI in turn assigned all of its right, title, and interest in the Accounts, including assumption of any liabilities, to a GECCC subsidiary, Colonial Pacific Leasing Corporation ("Colonial Pacific"). As such, Citibank asserts that whatever statutory or common-law liabilities it could have had to Jaffe or the plaintiff have long since been assumed by a series of other parties.

The plaintiff, in her own evidentiary submissions, does not demonstrate the existence of any material factual dispute. Instead, the plaintiff makes a series of meritless arguments. First, the plaintiff points to the fact that Vargas once received a letter instructing her to remit her payments in the future to "Citicorp Vendor Finance." As demonstrated by Citibank's evidence, however, CVF was an entity synonymous with Choice, not with Citibank. Second, the plaintiff contends that "Jaffe never provided a novation to Citibank" and therefore that Citibank has not been freed of its contractual obligations to Jaffe. That argument fails because, as Citibank has

10

demonstrated, it was never a party to any contract with Jaffe or the plaintiff. Third, the plaintiff argues that, "[a]ssuming it may be true as Citibank states . . . that it is not a proper defendant," Citibank is still "an assignee bank" and, as assignee rather than originator, "cannot benefit by law of the protections of the NBA or DIDA." Insofar as Citibank has demonstrated that it has no liability, the plaintiff's abstract contentions about the unavailability of a statutory defense are irrelevant.[4] The plaintiff having failed to demonstrate any basis for liability by Citibank, the claims against Citibank are dismissed with prejudice and in their entirety.[5]

## II. Choice Health Leasing

Choice has moved to dismiss all of the claims asserted in the Amended Complaint pursuant to Rules 8(a)(2) and 12(b)(6).[6] "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must

---

[4] Jaffe also contends that "[d]efendants' actions fail the 'plausible standard.'" This reference to a plaintiff's pleading burden has no relevance to this motion.

[5] Having converted Citibank's motion to a motion for summary judgment in order to have recourse to the factual materials submitted by both parties, it need not be decided whether the Amended Complaint, standing alone, would be dismissable under Rule 12(b)(6) standards as to some or all of the claims asserted against Citibank.

[6] Choice also indicates that it moves to dismiss various claims pursuant to Rule 9(b) and Rule 12(b)(1), and in the alternative to strike the class allegations of the Amended Complaint pursuant to Rule 23(c).

contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  This rule "does not require 'detailed factual allegations,'" id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)), but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555); see also id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

A trial court considering a Rule 12(b)(6) motion "accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor."  Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010).  To survive dismissal, "a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'"  Id. (quoting Twombly, 550 U.S. at 555).  In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying

the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.

   A.   National Bank Act

   Choice first moves to dismiss the plaintiff's claim under the National Bank Act, 12 U.S.C. §§ 85-86.  The NBA is a regulatory scheme governing the "lending and lending-related practices" of national banks.  Pac. Capital Bank, N.A. v. Connecticut, 542 F.3d 341, 345 (2d Cir. 2008); see also Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp., 439 U.S. 299, 314-15 (1978) (discussing the NBA's origin and purpose).  "Section 85 [of the NBA] 'sets forth the substantive limits on the rates of interest that national banks may charge,' while section 86 'sets forth the elements of a usury claim against a national bank . . . and prescribes the remedies available to borrowers who are charged higher rates.'" Mamot Feed Lot & Trucking v. Hobson, 539 F.3d 898, 902 (8th Cir. 2008) (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 9 (2003)).  Sections 85 and 86 apply only to "national banking associations" as that term is defined in 12 U.S.C. § 37.  Mamot, 439 F.3d at 902 (citation omitted); see also Krispin v. May Dep't Stores Co., 218 F.3d 919, 924 (8th Cir. 2000) ("[T]he NBA governs only national banks.").

13

Plaintiff's NBA claim against Choice fails because Choice is not a national bank.  While effectively conceding this point, the plaintiff argues that "whichever law Choice prefers it must be as Citibank's agent, and as liable as Citibank because they together made fraudlent [sic] charges."  Plaintiff's claims against Citibank having been dismissed, her effort to prevail on an NBA claim against Choice under an agency theory fails.  Moreover, the plaintiff provides no authority to support her proposition that a defendant which does not fall within the statutory criteria may nevertheless be held liable under the statute on an agency theory.  Accordingly, the NBA claim is dismissed.[7]

B.   DIDA

The plaintiff also purports to bring a claim for violation of the Depository Institutions Deregulation and Monetary Control Act, 12 U.S.C. § 1831d ("DIDA").[8]  Among other things, § 1831d

---

[7] The plaintiff also contends in opposition that "banking law, that is the NBA or DIDA, was never intended to shield parties to a law suit who were directly involved in banking issues."  It is the plaintiff, not the defendants, who asserts that the NBA and DIDA are relevant to this litigation.  Choice freely admits that it is not a "national bank" and thus that the NBA does not apply in any way.

[8] Section 1831d is also sometimes referred to by the statute within which it has been codified, the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1811 et seq.  See Discover Bank v. Vaden, 489 F.3d 594, 605 n.13 (4th Cir. 2007), rev'd on other grounds, 129 S. Ct. 1262 (2009).

"provides a civil cause of action for a person who is charged a rate [of interest] higher than that allowed" by the statute. Hobson, 539 F.3d at 902. By its terms, the statute applies only to "State-chartered insured depository institutions, including insured savings banks[] or insured branches of foreign banks." 12 U.S.C. § 1831d(a).

Plaintiff's DIDA claim also fails. Choice has asserted, and plaintiff does not seriously contest, that Choice is not a "State-chartered insured depository institution" within the meaning of that statute. Accordingly, the plaintiff's DIDA claim is dismissed.

C.   Civil RICO

Plaintiff's final federal claim is a claim against Choice pursuant to the civil RICO statute, 18 U.S.C. § 1964(c). That section provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains." Id. § 1964(c). "To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

15

The Amended Complaint asserts that Choice violated § 1962(a).  That subsection makes it illegal for any person "who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest . . . any part of such income . . . in acquisition of any interest in, or the establishment or operation of, any enterprise."  18 U.S.C. § 1962(a).  A civil claim premised on a violation of § 1962(a) thus "requires a showing that a defendant: (1) received income from a pattern of racketeering activity; (2) used or invested that income in the operation of an enterprise; and (3) caused the injury complained of by the use or investment of racketeering income in an enterprise."  Rao v. BP Prods. N. Am., Inc., 589 F.3d 389, 398 (7th Cir. 2009); accord Ouaknine v. MacFarlane, 897 F.2d 75, 82-83 (2d Cir. 1990).  The phrase "pattern of racketeering activity" is defined by § 1961(5) as "requir[ing] at least two acts of racketeering activity," with "racketeering activity" in turn defined in § 1961(1) to mean any of a number of explicitly enumerated crimes.  See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate act.").

Plaintiff's civil RICO claim is patently insufficient.  In seeking to demonstrate the existence of a "pattern of

16

racketeering activity" by Choice, the Amended Complaint relies upon 18 U.S.C. §§ 656 and 657.[9]  Those statutes, however, are not included within the definition of "racketeering activity" contained in 18 U.S.C. § 1961(1).[10]  It is well-settled that the list of predicate acts in § 1961(1) is an exclusive set, such that "[t]he acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed in § 1961(1)."  Spool, 520 F.3d at 183; see also Beck v. Prupis, 529 U.S. 494, 497 n.2 (2000) ((observing that the list of predicate acts in § 1961(1) is "exhaustive"); Annulli v. Panikkar, 200 F.3d 189, 200 (3d Cir. 1999).  Because the plaintiff has failed to allege any predicate acts of racketeering by Choice, the plaintiff's civil RICO claim must fail.

---

[9] In opposition, the plaintiff also argues that Choice's "unlawful addition of fees . . . amount[ed] to fraud" and that "[t]hat fraud had a ripple effect which became the predicate act giving rise actions [sic] based upon . . . [RICO]."  This argument fails because common-law fraud is also not a predicate act under 18 U.S.C. § 1961(1).

[10] Nor are those statutes even relevant to the plaintiff's factual allegations.  Section 656 criminalizes theft, embezzlement, or misapplication of "the moneys, funds or credits" by "an officer, director, agent or employee" of, inter alia, a national bank, FDIC-insured bank, or member bank of the Federal Reserve.  Section 657 criminalizes theft, embezzlement, or misapplication by employees of various other governmental and non-governmental "lending, credit and insurance institutions."  The Amended Complaint does not allege that a Choice employee embezzled money from Choice, nor does the Amended Complaint allege that Choice is among the types of organizations identified in § 656 or § 657.

III. Leave to Amend

The January 11 Order directed that "[t]he plaintiff shall be given no further opportunity to cure any deficiency in his complaint that was identified in the defendants' pending motions to dismiss [the Initial Complaint]." The plaintiff's DIDA and NBA claims were included in the Initial Complaint, and their deficiencies were clearly identified by the defendants in the first round of briefing. Accordingly, the plaintiff will not be given further leave to amend those claims.

The plaintiff's civil RICO claim, however, was pleaded for the first time in the Amended Complaint. The plaintiff has therefore not had any opportunity to correct the deficiencies associated with her RICO claim. In opposing Choice's motion to dismiss, the plaintiff does not request leave to amend. Nevertheless, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, should the plaintiff wish to attempt to cure the deficiencies of her civil RICO claim, she will be given one further, and final, opportunity in which to do so. Any amendment must be made in accordance with the terms of the accompanying scheduling Order.

IV. State Law Claims and Supplemental Jurisdiction

The remainder of the plaintiff's Amended Complaint asserts various state law claims, including usury, fraud, defamation,

18

conversion, and unjust enrichment.  Choice moves to dismiss these claims on various grounds, including lack of standing, failure to plead fraud with particularity, and failure to state a claim as to each individual count.

In the Amended Complaint, the plaintiff pleads that the basis of this Court's subject matter jurisdiction is the existence of a federal question pursuant to 28 U.S.C. § 1331. It is possible, however, that any second amended pleading by the plaintiff will not contain any plausible federal claims.  In such event, and assuming the lack of an alternative basis of federal subject matter jurisdiction, the Court will then have to determine whether to exercise supplemental jurisdiction over the state law claims.  See 28 U.S.C. § 1367(c).  Because it is premature to decide whether supplemental jurisdiction should be exercised, in light of the fact that further leave to amend the RICO claim has been permitted, the Court refrains from considering at this time the merits of Choice's motion with respect to the state-law claims contained in the Amended Complaint.  Should the plaintiff file a second amended complaint, Choice may renew its motion to dismiss at that time.

CONCLUSION

Citibank's March 5, 2010 motion to dismiss, converted to a motion for summary judgment, is granted. The Clerk of Court shall dismiss Citibank from this litigation.

Choice's March 4, 2010 motion to dismiss is granted in part and terminated as moot in part. The plaintiff shall be given a final opportunity to amend her pleading, in accordance with a separate scheduling Order accompanying this Opinion.

SO ORDERED:

Dated:   New York, New York
         August 26, 2010

                                        _____
                                              DENISE COTE
                                        United States District Judge