```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
DR. IBELKA VARGAS, and the class of    :
those persons similarly situated,      :      OPINION AND ORDER
                                       :
               Plaintiffs,             :
          -v-                          :      09 Civ. 8264 (DLC)
                                       :
CHOICE HEALTH LEASING,                 :
                                       :
               Defendant.              :
--------------------------------------X
```

APPEARANCES:

For Plaintiffs:
Phillip Jaffe
370 East 76th Street
Suite-C 1002
New York, NY 10021

For Defendant:
Clay J. Pierce
Danica S. You
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
     -and-
Frank Peretore
Fredda G. Katcoff
Peretore & Peretore, P.C.
110 Park Street
Staten Island, NY 10306

DENISE COTE, District Judge:

     Plaintiff Ibelka Vargas ("Vargas" or "the plaintiff") -- by

and through her counsel, Phillip Jaffe ("Jaffe"), who was

formerly a named plaintiff in this lawsuit -- brings this

putative class action challenging the lawfulness of late fees

she incurred in connection with a lease of certain dental

equipment.  Jaffe was listed as the lessee.  On January 21, 2011, defendant Choice Health Leasing ("Choice") moved to dismiss the plaintiffs' second amended complaint (the "Second Amended Complaint").  For the following reasons, the motion to dismiss is granted.

BACKGROUND

The factual background to this case has already been described in an Opinion of August 26, Vargas v. Choice Health Leasing, No. 09 Civ. 8264 (DLC), 2010 WL 3398482 (S.D.N.Y. Aug. 26, 2010) (the "August Opinion"), familiarity with which is assumed.  Only the facts necessary to a resolution of the pending motion are included here.  These facts, taken from the Second Amended Complaint and its attachments, are assumed to be true for the purposes of deciding the motion.[1]

After graduating from dental school, Vargas sought to rent the office space and the equipment necessary to establish a dental practice.  Vargas asked Jaffe to co-sign the lease for office space and to lease "in his name" dental equipment from Choice.  While Jaffe is "legally responsible for any

---

[1] "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."  Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

indebtedness" to Choice, pursuant to an oral contract between
Vargas and Jaffe, Vargas "has made all payments on equipment" to
Choice.

Initially, Vargas made her payments to Choice on time or
"near the deadline."  At some point, Vargas spoke with a person
"associated with Choice[]," who informed her that "if she paid
the monthly fee on the day it was due by telephone . . . her
payment would be timely and [would] not . . . trigger[] a 'late
payment' fee."  Nonetheless, in some instances, when Vargas paid
on time by telephone she was assessed late fees.  Vargas
incurred twenty-one late fees based on fifty-five timely
telephone payments, and twenty-nine late fees from sixty-eight
timely telephone payments.  Vargas paid Choice $228,671.29 in
principal and interest and $24,206.93 in late fees on a $200,000
loan.


## PROCEDURAL HISTORY

On September 29, 2009, Jaffe, proceeding pro se, filed this
lawsuit as a purported class action against Choice and Citibank,
N.A. ("Citibank") for violating various federal and state laws
(the "Initial Complaint").  On October 28, Choice and Citibank
filed separate motions to dismiss the Initial Complaint.  In his
opposition to these motions, Jaffe sought permission to add

claims.  By Order dated January 11, 2010, Jaffe was directed to
amend the pleading by February 5.

On or about February 2, Jaffe, now serving as counsel,
filed an amended complaint on behalf of Vargas and a putative
class of similarly situated persons (the "Amended Complaint").
Although the Amended Complaint did not include Jaffe as a
plaintiff, he was still identified as "the legal owner of the
equipment leased" from Choice, and the person "legally
responsible for any indebtedness to Choice[]."  Choice and
Citibank moved to dismiss the Amended Complaint.  In the August
Opinion, Citibank's motion to dismiss was converted to a motion
for summary judgment and granted.  The August Opinion also
dismissed the plaintiff's claims arising under the National Bank
Act, 12 U.S.C. §§ 85-86, and the Depository Institutions
Deregulation and Monetary Control Act, 12 U.S.C. § 1831d.
Plaintiff's civil claim under the Racketeer Influenced and
Corrupt Organizations Act, 18 U.S.C. § 1964(c) ("RICO") was
dismissed with leave to amend by October 1.

On October 1, the Court received a letter from Jaffe
accompanied by a document labeled "Second Amended Complaint and
Demand for Jury."  On December 3, Jaffe was given until December

10 to serve Choice with a copy of the Second Amended Complaint
and until December 17 to file proof of service.[2]

On January 21, 2011, Choice filed a motion to dismiss the
Second Amended Complaint.  The motion became fully submitted on
March 14.

<u>DISUSSION</u>

Choice has moved to dismiss all of the claims asserted in
the Second Amended Complaint pursuant to Rule 12(b)(6), Fed. R.
Civ. P.  "Under Federal Rule of Civil Procedure 8(a)(2), a
pleading must contain a 'short and plain statement of the claim
showing that the pleader is entitled to relief.'"  <u>Ashcroft v.
Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  For a plaintiff's claim to
survive a motion to dismiss, "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"  <u>Id</u>. (quoting <u>Bell
Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 570 (2007) (citation
omitted)).  Applying this plausibility standard is "a context-
specific task that requires the reviewing court to draw on its
judicial experience and common sense."  <u>Id</u>. at 1950.

A court considering a motion to dismiss pursuant to Rule
12(b)(6) "must accept as true all allegations in the complaint

---

[2] To date, neither the Second Amended Complaint nor proof of its
service has been filed correctly.

and draw all reasonable inferences in favor of the non-moving party."  Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted).  A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 129 S. Ct. at 1949-50 (quoting Twombly, 550 U.S. at 555, 557).

I. Federal Claim

Vargas's only federal claim in the Second Amended Complaint is a civil RICO claim brought pursuant to 18 U.S.C. § 1962(a). Choice argues that Vargas has failed to plead any predicate acts of "racketeering activity" as defined in 18 U.S.C. § 1961(1).[3]

Section 1962(a) makes it illegal for any person "who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest . . . any part of such income . . . in acquisition of any interest in, or the

---

[3] Since Vargas has failed to plead a "pattern of racketeering" within the meaning of 18 U.S.C. §§ 1962(a) and (c), it is not necessary to consider whether plaintiff has properly alleged the existence of an "enterprise" distinct from Choice, as required by § 1962.  See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994) (plaintiff fails to state an actionable claim under § 1962 "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant").

establishment or operation of, any enterprise."  18 U.S.C.

§ 1962(a).[4]  A civil claim premised on a violation of § 1962(a)

requires a showing that a defendant received income from a

pattern of racketeering activity.  Ouaknine v. MacFarlane, 897

F.2d 75, 82 (2d Cir. 1990).  The phrase "pattern of racketeering

activity" is defined in § 1961(5) as "requir[ing] at least two

acts of racketeering activity," with "racketeering activity" in

turn defined in § 1961(1) to mean any of a number of explicitly

enumerated crimes.  See Sedima, S.P.R.L. v. Imrex Co., Inc., 473

U.S. 479, 495 (1985).

        In seeking to demonstrate the existence of a "pattern of

racketeering activity," the Second Amended Complaint alleges

violations of 18 U.S.C. § 1344.[5]  To plead a violation of § 1344,

Vargas must allege that Choice "knowingly execute[d], or

attempt[ed] to execute, a scheme or artifice -- (1) to defraud a

financial institution; or (2) to obtain any of the moneys, funds

---

[4] At certain points, the Second Amended complaint refers to
§ 1962(c).  Even if plaintiff's RICO claim is asserted under
that provision, plaintiff's claim would still be dismissed.
Moss v. Morgan Stanely, Inc., 719 F.2d 5, 17 (2d Cir. 1983)
(racketeering activity must be alleged for claims brought under
§§ 1962(a), (b) and (c)).

[5] The Second Amended Complaint also references 18 U.S.C. §§ 656
and 657.  But as the August Opinion explains, neither of those
statutes constitutes "racketeering activities" under 18 U.S.C. §
1961(1), which is the "exclusive" list of offenses satisfying
the "racketeering activity" requirement.  See Vargas, 2010 WL
3398482, at *6.

. . . owned by, or under the custody or control of, a <u>financial institution</u>." 18 U.S.C. § 1344 (emphasis supplied).  Section 1344 was designed to prosecute "frauds in which the victims are financial institutions that are federally created, controlled, or insured."  <u>Bank of China, N.Y. Branch v. NBM LLC</u>, 359 F.3d 171, 177 (2d Cir. 2004) (citation omitted)).  Liability under § 1344 may not be established "by evidence merely that some person other than a federally insured financial institution was defrauded in a way that happened to involve banking, without evidence that such an institution was an intended victim." <u>United States v. Laljie</u>, 184 F.3d 180, 189-90 (2d Cir. 1999).

Vargas asserts that Choice intended to defraud plaintiff and a purported class of other similarly situated borrowers. The Second Amended complaint, however, does not allege that Vargas or any of the other similarly situated borrowers were "financial institutions" within the meaning of § 1344.  Choice's motion to dismiss Vargas's civil RICO claim is therefore granted.

Vargas argues that by pleading the existence of a scheme to defraud a bank's customers, she has stated a violation of § 1344.  In a similar vein, plaintiff contends that a defendant need not have intended a bank to be the <u>primary</u> target of a fraud in order for § 1344 to apply.  Both of these arguments lack merit.  Plaintiff largely relies on <u>United States v.</u>

<u>Brandon</u>, 17 F.3d 409 (1st Cir. 1994), in which the First Circuit held that a § 1344 claim may be established when a defendant "knowingly executed a fraudulent scheme that exposed a federally insured bank to a risk of loss," even when the alleged scheme was not "directed <u>solely</u> toward a particular institution." <u>Id</u>. at 426. Nothing in the Second Amended Complaint suggests, however, that a federally insured bank was exposed to a risk of loss or was an indirect target of Choice's alleged scheme.

II. State Law Claims

As there are no longer any federal claims in this action, it is within the Court's discretion whether to exercise supplemental jurisdiction over the plaintiff's remaining claims under state law, including her claims for fraud, defamation, conversion, unjust enrichment, usury, and intentional infliction of emotional distress lending. <u>Klein & Co. Futures, Inc. v. Bd.</u> <u>of Trade of City of N.Y.</u>, 464 F.3d 255, 262-63 (2d Cir. 2006). "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." <u>Id</u>. at 262. Accordingly, the Court declines to exercise supplemental jurisdiction and need not address Choice's argument that plaintiff fails to allege a claim under state law.

CONCLUSION

Choice's January 21, 2011 motion to dismiss is granted. The Clerk of Court shall enter judgment for defendants on the federal civil RICO claim.  The state law claims are dismissed without prejudice to refiling in state court.  The Clerk of Court shall close the case.

SO ORDERED:

Dated:   New York, New York
         May 9, 2011

                              DENISE COTE
                         United States District Judge